FILED
U.S. DISTRICT COURT
SAVA[...]

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA    2013 JAN 28 AM 11: [...]
SAVANNAH DIVISION

CLERK___
SO. DIST. OF GA.

PHUONG K. NGUYEN,              )
                               )
    Plaintiff,                 )
                               )
v.                             )    CASE NO. CV411-174
                               )
GEORGIA POWER COMPANY,         )
                               )
    Defendant.                 )
_____)

### O R D E R

Before the Court is Defendant Georgia Power Company's ("Georgia Power") Motion for Summary Judgment. (Doc. 16.) For the reasons that follow, Defendant's motion is **GRANTED** and Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

This case involves allegations of race discrimination by Georgia Power against Plaintiff.[1] Plaintiff, an Asian American, began working for Savannah Electric in 1992. (Doc. 21 ¶ 38.) Savannah Electric merged with Georgia Power in 2006. (Doc. 16-18 ¶ 14.) At all times during Plaintiff's employment, he was a member of the International Brotherhood of Electrical Workers, Local No.

---

[1] The Court construes the facts in the light most favorable to Plaintiff. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

84 ("Union"). (Id. ¶ 7.) Defendant has a collective-bargaining agreement with the Union ("CBA"), which governs the terms and conditions of Union members' employment. (Id. ¶ 8.) Defendant has established a Labor Relations Department, which offers guidance and advises on employment and disciplinary actions for employees covered by the CBA.

In 2007, Defendant promoted Plaintiff to the position of a troubleman.[2] (Id. ¶ 39.) Plaintiff's immediate supervisor was initially Ronald Canady and later Larry Varner, who both reported directly to Distribution Manager Matthew Conner. (Id. ¶¶ 19-20.)

Plaintiff not only worked for Defendant, but also was a customer whose account became delinquent in 2010 due to over $1,000.00 in unpaid electric bills. (Id. ¶ 22.) Defendant provided Plaintiff several notifications, warning that his electrical service would be disconnected if the account was not brought current. (Id. ¶¶ 23, 24.) Payment was not received. On September 10, 2010, Defendant's Customer Service Department disconnected Plaintiff's electricity and placed a seal over the meter box. (Id. ¶ 25.) The next day, after realizing his power had been

---

[2] According to the parties, a troubleman was responsible for troubleshooting power outages of residences and businesses as well as servicing street lights, reconnections, disconnections, and other issues. (Doc. 16-18 ¶ 18; Doc. 21 ¶ 39.)

2

disconnected, Plaintiff removed the seal and restored electrical power. (Id. ¶ 28.) Plaintiff admits his actions were unauthorized and that he never reported his actions to Defendant. (Id. ¶ 29.)

On September 14, 2010, a Customer Service Department manager informed Distribution Manager Matthew Conner that her department observed electrical use at Plaintiff's residence despite the September 10, 2010 disconnect order. (Id. ¶ 31.) Conner and Canady went to Plaintiff's residence and observed that the seal had been removed, the meter was connected, and the house drawing electricity. (Id. ¶ 33.) According to Defendant, the Customer Service Department then ordered the meter to be removed, as is standard practice when electrical service is restored without authorization. (Id. ¶ 36.)

Plaintiff then met with Conner, Canady, Plaintiff's direct supervisor Larry Varner, and Plaintiff's Shop Steward David Harvey. (Id. ¶ 40.) Plaintiff freely admitted he had restored his own electrical power without authorization and that he knew his conduct was a violation of Defendant's rules of conduct. (Id. ¶ 42.) After being administratively suspended (Doc. 16-4 at 21), Plaintiff's employment was formally terminated on September 16, 2010 (Id. at 22).

3

Pursuant to the CBA, Plaintiff filed a grievance. Plaintiff contends that Defendant violated its common practice to have the employee's supervisor attend the grievance hearing. Soon thereafter, Defendant denied Plaintiff's grievance. (Doc. 21 ¶ 69.) Plaintiff then filed with Defendant's workplace ethics department a discrimination complaint against Conner. (Id. ¶ 70.) According to Plaintiff, no disciplinary action was taken against Conner as a result of Plaintiff's discrimination complaint. (Id. ¶ 72.)

Plaintiff proceeded to file an EEOC complaint, which was denied on April 7, 2011. (Doc. 1-2 at 2.) After receiving notice of his right to sue, Plaintiff timely filed suit in this Court. (Doc. 1.) The complaint contains four counts against Defendant: (1) Title VII racial discrimination; (2) 42 U.S.C. § 1981 intentional racial discrimination; (3) attorney's fees; and (4) intentional infliction of emotional distress. (Id.) Plaintiff has voluntarily dismissed the intentional infliction of emotional distress claim. (Doc. 16-2 at 1.)

Defendant has moved for summary judgment. (Doc. 16.) In the motion, Defendant argues that Plaintiff cannot establish a prima facie case of race discrimination because he cannot identify anyone who engaged in nearly identical

behavior and whose employment was not terminated. (Doc. 16-1 at 2.) In the alternative, Defendant contends that Plaintiff's employment was terminated for the legitimate, non-discriminatory reason that Plaintiff restored power to his personal residence without authorization. (Id.) In response, Plaintiff suggests that he has established a prima facie case because two Caucasian employees—Reggie Abbott and Joey Blissett—engaged in conduct substantially similar to Plaintiff's, but were only reprimanded. (Doc. 20 at 1.)

**ANALYSIS**

I. <u>STANDARD OF REVIEW</u>

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u> The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (<u>quoting</u> Fed. R. Civ. P. 56 advisory committee notes).

5

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portion of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Where, as here, there is no direct evidence of discrimination, a plaintiff must establish a circumstantial, prima facie case of racial discrimination by demonstrating that: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside [his] classification more favorably; and (4) he was qualified to do the job.'"[3] Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citing McDonnell Douglas

---

[3] The Eleventh Circuit has held that claims under Title VII and 42 U.S.C. § 1981 have the same requirements of proof and present the same analytical framework. Jones v. Ala. Power Co., 282 F. App'x 780, 781 n.1 (11th Cir. 2008) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998)). Accordingly, the Court will address these claims together.

7

Corp. v. Green, 411 U.S. 792, 802 (1973)). To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects." Id. at 1562. Moreover, to make this determination, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. Both the "quantity and quality of the comparator's misconduct" must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

Under McDonnell Douglas, a plaintiff must first produce sufficient evidence to make out a prima facie case, which creates a presumption that the employer unlawfully discriminated against him in taking the alleged adverse action. Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997). If a prima facie case is made, the defendant employer must rebut this presumption by producing evidence that the employment action was motivated by legitimate, non-discriminatory or non-retaliatory reasons. Id. Should the defendant produce legitimate non-discriminatory reasons, the McDonnell Douglas presumption

drops from the case and the plaintiff has an opportunity to discredit defendant's proffered explanation. Id. at 1528.

Presently, Plaintiff has not established a prima facie case. Plaintiff has not established that Defendant treated similarly situated employees who are not members of his class more favorably. Plaintiff has attempted to analogize two similarly situated employees—Reggie Abbott and Joey Blissett. In order to make this comparison, Plaintiff must show that he and Abbott and Blissett are "similarly situated in all relevant respects." Holifield, 115 F.3d at 1562. For the reasons that follow, Plaintiff is unable to do so, and summary judgment is proper.

### A. Similarly Situated Employees

#### 1. Reggie Abbott

Reggie Abbott, a Caucasian male, was a dispatch supervisor for Savannah Electric. Because Abbott was a supervisor, he was not covered by the CBA that existed between Savannah Electric and the Union. In 2005, before the merger of Savannah Electric with Georgia Power, Abbott obtained a work order to provide electric power to his house so that an electrician could check heating and airflow. (Doc. 16-11 at 2-5.) Abbott directed an employee of Savannah Electric to use a jumper plate to temporarily

provide power to the house.[4] Abbott testified that it was common practice at the time for electricians to use a jumper plate to test the conditions of a house. (Id.) According to Abbott, because it was common practice and because he was a supervisor, he did not believe he needed to receive permission. (Id.) After Savannah Electric learned of Abbott's actions, Jimmy Carnes—Savannah Electric's Senior Investigator in the Corporate Security Department—and Carnes's supervisor, Matthew Conner, investigated the matter. Conner reported the findings to Abbott's two supervisors—David Johnson and Rex Johnson, who then decided the proper course of discipline for Abbott's misconduct. Abbott received a "coaching session" from his two supervisors and received no further discipline. (Doc. 20 at 9.)

Here, although Plaintiff and Abbott both reconnected electricity, the two individuals are not similarly situated. Critically, Abbott was in a supervisory position when his misconduct occurred; Plaintiff was not a supervisor. Indeed, "different factors come into play in disciplining employees at different levels" making "an employee in a management position generally ill-suited to

---

[4] According to the parties, a jumper plate allows electricity to be used without the meter recording any usage.

10

serve as a comparator for a lower-level employee." Pastures v. Potter, 2009 U.S. Dist. LEXIS 115111, at *23-24 (S.D. Ga. Dec. 10, 2009).

Additionally, different individuals made the disciplinary decisions regarding each employee's misconduct. See Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.") Abbott was disciplined by David Johnson and Rex Johnson. Plaintiff has not produced anything in the record to suggest that Conner made any disciplinary decisions for Abbott. Conner, however, was involved in Plaintiff's disciplinary proceedings. It was different supervisors who made the ultimate disciplinary decisions based upon independent assessments of the misconduct. Simply, the comparator's misconduct is not similarly situated in all relevant respects to Plaintiff's. See Holifield, 115 F.3d at 1562; see also Burke-Fowler v. Orange Cnty. Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). Abbott is not a proper comparator for Plaintiff—Abbott was not a member of the Union or subject to the CBA, was in a supervisory position, and was subject to different individuals' disciplinary decision-making.

## 2. Joey Blissett

Joey Blissett, a Caucasian male, also worked for Defendant in a supervisory position. Matthew Conner assumed managerial authority over Blissett in March 2007. In May 2011, Blisett received a written reminder from Conner regarding his job performance. (Doc. 20 at 9-10.) Specifically, an investigation found that Blissett had a chainsaw belonging to Defendant in a shed at Blissett's personal residence. (Id.) Blissett stated that he both used the chainsaw for personal use and loaned it to other individuals. The written reminder outlined Blissett's violation of the Code of Ethics regarding "us[ing] corporate resources—time, personnel, equipment, and supplies—only for company business or company approved activities." (Doc. 16-10 at 4.) According to Conner, he believed Blissett's actions were inadvertent because of "a practice in that headquarters and several of our other headquarters of borrowing equipment." (Doc. 20 at 10.)

Here again, the misconduct for which Blissett was disciplined is hardly similar to that engaged in by Plaintiff. See Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984) ("[T]he misconduct for which [the plaintiff] was discharged [must be] nearly identical to that engaged in by an employee outside the protected

12

class whom the employer retained."). Plaintiff was discharged for his unauthorized restoring of power to his residence after his account fell past due. Plaintiff was unequivocal in admitting that he reactivated his power without authorization. Blissett received a written reminder for using and loaning a company chainsaw. Blissett's conduct, however, was deemed to be inadvertent and common practice. Regardless of whether inadvertent or common practice, Blissett's violation of the Code of Ethics is not sufficiently identical to Plaintiff's conduct. See Holifield, 115 F.3d at 1562. While there does not have to be an exact correlation of misconduct, it must be similar in all relevant aspects. See Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001). The conduct of Blissett and Plaintiff is not similar in any relevant aspects. Blissett used and loaned a work tool; Plaintiff restored power to his residence without authorization. Thus, the nature of the offenses committed are not similar.

Plaintiff attempts to analogize Blissett and Plaintiff's conduct by suggesting that both should be treated similarly because both violated the Code of Ethics. (Doc. 20 at 9.) Such a standard should hardly be the case. The misconduct of Blissett borrowing tools is not remotely similar to that of Plaintiff so to constitute a similarly

situated employee. See Summers v. City of Sothan, 757 F. Supp. 2d 1184, 1206-07 (M.D. Ala. 2010) (finding that two employees were not similarly situated even when both violated the same rule and both subjected the employer to undue financial loss because the misconduct was not nearly identical). In short, "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." Silvera, 244 F.3d at 1369. To equate conduct that is not nearly identical, as is the case here, would improperly take away Defendant's right to make valid employment determinations.

Finally, as was the case with Abbott, Blissett was in a supervisory position. Plaintiff was not. While not solely determinative, different factors are weighed when disciplining employees that are supervisors versus regular employees. See Jones v. Gerwens, 874 F.2d at 1541. As a result of all these factors, Blissett is also not a proper comparator. Because of Plaintiff's failure to "show the existence of a similarly situated employee, summary judgment is appropriate." Holifield, 115 F.3d at 1562.

### B. Defendant's Legitimate, Non-Discriminatory Justification of Plaintiff's Employment Termination

Even if Plaintiff could establish a prima facie case of discrimination, Defendant has presented legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Defendant's disciplinary actions were taken as a result of Plaintiff's violation of company policy and the Code of Ethics. (Doc. 16-4 at 22.) Accordingly, Plaintiff would be given the opportunity to come forward with evidence that any justification is merely a pretext for discrimination. See Combs, 106 F.3d at 1528, 1538.

If the reason provided by the employer is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must rebut it. Chapman v. AI Transport., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). A reason cannot be a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis added); see also Tiggs-Vauhn v. Tuscaloosa Hous. Auth., 385 F. App'x 919, 923 (11th Cir. 2010).

In attempting to rebut Defendant's justification, Plaintiff relies almost exclusively on the testimony of Plaintiff's immediate supervisor—Larry Varner—to establish

15

pretext. According to Plaintiff, there was discriminatory animus because Varner testified that he believed Plaintiff was discriminated against, Conner used racial epithets, and Varner was demoted after voicing his views about Plaintiff. (Doc. 20 at 24.)

Despite these claims, Plaintiff has failed to show that Defendant's proffered reason is unworthy of credence, or that Defendant was more likely motivated by a discriminatory reason in taking action against Plaintiff. See Holifield v. Reno, 115 F.3d at 1565-66 (citing Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 336 (7th Cir. 1991)). Plaintiff admits he reconnected his power without authorization in violation of Defendant's Code of Ethics.[5] Accordingly, even if Plaintiff could present a prima facie case, summary judgment is proper because Defendant has provided a legitimate, non-discriminatory justification that Plaintiff cannot show is both false and pretextual. See Hicks, 509 U.S. at 515.

C. Attorney's Fees

Finally, Plaintiff seeks to recover attorney's fees pursuant to 42 U.S.C. § 1988(b). (Doc. 10 ¶¶ 87-93.)

---

[5] In Defendant's brief in support of summary judgment, Defendant has provided three other employees—two African Americans and a Caucasian—who were all terminated after reconnecting power without authorization. (Doc. 16-1 at 15.)

However, because all of Plaintiff's substantive claims have been dismissed, there is no basis for attorney's fees. See 42 U.S.C. § 2000e-5(k). Accordingly, Plaintiff's claim for attorney's fees must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to demonstrate that there exist any genuine issues of material fact. Accordingly, Defendant's motion is **GRANTED** and Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 28th day of January 2013.

*[signature]*
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA